UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff/<br>Counter-Defendant | )<br>)<br>) |
| vs. | ) CAUSE NO. 3:17-cv-882 RLM-MGG<br>) |
| DOMETIC CORPORATION, | )<br>) |
| Defendant/<br>Counter-Plaintiff | )<br>) |

OPINION and ORDER

Liberty Mutual Insurance Company sued Dometic Corporation seeking a declaratory judgment that it has no duty to defend or indemnify Dometic against three putative class action complaints. Dometic counter-claimed, alleging Liberty Mutual breached its contractual duty to defend Dometic against the underlying complaints. Liberty Mutual and Dometic each moved for judgment on the pleadings, [Doc. Nos. 37, 39], and the court heard arguments on the motions on February 27, 2019. For the following reasons, the court grants the motions in part and denies them in part.

I. BACKGROUND

Dometic bought four consecutive commercial general liability policies from Liberty Mutual. The policies provide coverage for property damage (among other things) and require Liberty Mutual to defend Dometic against a suit seeking

damages because of property damage. Dometic tendered three putative class action complaints to Liberty Mutual, seeking coverage.[1] The underlying complaints allege that Dometic sold gas absorption refrigerators, mainly for RVs, containing a defective cooling unit that can leak flammable gases and cause fires. Liberty Mutual elected to participate in Dometic's defense in each of the underlying suits subject to a reservation of rights, including the right to seek reimbursement of defense costs, and filed this suit seeking a declaratory judgment that it has no duty to defend or indemnify Dometic against the underlying complaints. Dometic filed breach of contract counterclaims. The parties moved for judgment on the pleadings on Liberty Mutual's claims.

*The Policies*

Dometic purchased four policies, covering the periods from 2001 to 2002, 2002 to 2003, 2003 to 2004, and 2004 to 2005. The Liberty Mutual policies

---

[1] About two weeks before the hearing on the cross motions for judgment on the pleadings, Liberty Mutual filed a notice reporting that the three underlying putative class action suits were consolidated in the Southern District of Florida and requesting that the court take judicial notice of the new consolidated class action complaint. [Doc. No. 49]. Dometic asked the court to decline to take judicial notice, arguing the consolidated complaint was irrelevant to whether the underlying complaints attached to Liberty Mutual's declaratory action complaint triggered a duty to defend. At the hearing, Liberty Mutual agreed that the court needn't take notice of the consolidated class action complaint to resolve the issues relevant to the motions for judgment on the pleading, but argued that the consolidated complaint "crystalizes" the nature of the class action claims. The court could properly take judicial notice of the consolidated class action complaint, Federal Rule of Evidence 201; Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1073 (7th Cir. 2013) (citing Gen. Elec. Capital Corp. v. Lease Res. Corp., 128 F.3d 1074, 1081–82 (7th Cir. 1997)), but agrees with the parties that the consolidated class action complaint is irrelevant to the motions before the court and, so, declines to do so.

2

provide coverage for "bodily injury"[2] and "property damage"[3] caused by an "occurrence"[4] during the policy period. The policies provide that Liberty Mutual has the "right and duty to defend the insured against any 'suit' seeking [damages because of property damage]." [Doc. No. 1-1 at 30]. The policies include several exclusions and Liberty Mutual argues that exclusions a, k, m, and n bar or limit coverage in this case.

*The Underlying Complaints--The* Papasan *Complaint*

Dometic tendered three putative class action complaints to Liberty Mutual, seeking coverage under the policies. The *Papasan* putative class action complaint alleges that Dometic "refrigerators contain dangerous defects that can cause them to vent pressurized hydrogen and ignite a fire." [Doc. No. 1–5 at ¶ 1]. Some of the named plaintiffs claim that fires caused by Dometic refrigerators damaged property, including damage to RVs, other personal property, and improvements to real property. The complaint alleges that Dometic's "[d]efective [g]as [a]bsorption [r]efrigerators have caused thousands of fires since 1997" and defines the putative class as including "all persons who purchased or owned a

---

[2] Because the underlying complaints expressly disclaim damages for bodily injury, the policies' coverage for bodily injury is irrelevant. [*See, e.g.,* Doc. No. 1–5 at ¶ 9].

[3] The policies define property damage as "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured." [*See, e.g.,* Doc. No. 1-1 at 42].

[4] The policies define an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See, e.g.,* id.

3

[d]efective [g]as [a]bsorption [r]efrigerator manufactured or purchased on or after January 1, 1997." Id. at ¶ 133, 194].

*The* Zucconi *Complaint*

The *Zucconi* putative class action complaint alleges that Dometic refrigerators' "can prematurely develop cracks that release highly flammable hydrogen and ammonia [that] leak and may ignite." [Doc. No. 1–6 at ¶ 3]. Some of the named plaintiffs allege property damage from fires allegedly caused by Dometic refrigerators, including damage to RVs and other personal property. *See, e.g.,* id. at ¶ 32, 47. The complaint alleges that "[h]undreds, if not thousands, of fires have resulted from leaks in [Dometic refrigerators, which] . . . spread very fast and can turn into raging infernos . . . causing millions of dollars in property damage." Id. at ¶ 77. It defines the putative class as including "[a]ll persons . . . who purchased a Dometic gas absorption refrigerator with a [d]efective [c]ooling [u]nit." Id. at ¶ 127.

*The* Zimmer *Complaint*

The *Zimmer* putative class action complaint alleges that Dometic refrigerators "are prone to premature corrosion and stress fatigue and develop microscopic cracks, causing noxious and flammable chemicals and gases . . . inside the boiler tubes to leak[,] . . . creat[ing] . . . a serious risk of fire." [Doc. No. 1–7 at ¶ 3]. Some of the named plaintiffs allege that their Dometic products caused fires, but don't specifically claim that the fires damaged property. The

4

complaint generally alleges that "[h]undreds, if not thousands, of fires have resulted from leaks in [Dometic refrigerators, which] . . . spread very fast and can turn into raging infernos, causing millions of dollars in property damage." Id. at ¶ 179. The complaint defines the putative class as all persons in nine states who purchased or owned a defective Dometic refrigerator from January 1, 2001 to the present. Id. at ¶ 233, 235.

## II. STANDARD OF REVIEW

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). "To survive a motion for judgment on the pleadings, a complaint must state a claim to relief that is plausible on its face." Milwaukee Police Ass'n v. Flynn, 863 F.3d 636, 640 (7th Cir. 2017) (quoting Wagner v. Teva Pharm. USA, Inc., 840 F.3d 355, 357–358 (7th Cir. 2016)). The court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all reasonable inferences in the plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell v. City of Chicago, 835 F.3d 736, 738 (7th Cir. 2016). A Rule 12(c) motion can be granted "when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." Moss v. Martin, 473 F.3d 694, 698 (7th Cir. 2007).

III. DISCUSSION

The court agrees with the parties and the Southern District of Indiana, which applied Indiana law in a previous case addressing the same insurance policies, that Indiana law governs this insurance dispute. *See* Dometic Corp. v. Liberty Mut. Ins. Co., No. 1:06-CV-1260-DFH-TAB, 2008 WL 4443234, at *1 (S.D. Ind. Sept. 26, 2008). In Indiana, "[g]enerally, the interpretation of an insurance policy presents a question of law." Cinergy Corp. v. Assoc. Elec. & Gas, 865 N.E.2d 571, 574 (Ind. 2007) (citing Colonial Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind. 1997)). The language of an insurance policy contract "should be given its plain and ordinary meaning." Id. A ruling as a matter of law is only appropriate if the policy is unambiguous or the ambiguity can be resolved "without the aid of the fact-finder." Id. (citing Plumlee v. Monroe Guar. Ins. Co., 655 N.E.2d 350, 354 (Ind. Ct. App. 1995); Kutche Chevrolet-Oldsmobile-Pontiac-Buick, Inc. v. Anderson Banking Co., 597 N.E.2d 1307, 1309 (Ind. Ct. App. 1992)).

"In order to establish that an insurer has a duty to defend, the insured bears the initial burden of establishing that a claim is covered by [the] policy." Def. Sec. Co. v. First Mercury Ins. Co., 803 F.3d 327, 331 (7th Cir. 2015). The nature of the underlying complaint against the insured determines the insurer's duty to defend. Hayes Lemmerz Int'l, Inc. v. Ace Am. Ins. Co., 619 F.3d 777, 781 (7th Cir. 2010) (quoting Transamerica Ins. Services v. Kopko, 570 N.E.2d 1283, 1285 (Ind. 1991)). If the underlying "pleadings reveal that a claim is clearly excluded under the policy, then no defense is required." Def. Sec. Co. v. First

Mercury Ins. Co., 803 F.3d at 334 (quoting Newnam Mfg., Inc. v. Transcon. Ins. Co., 871 N.E.2d 396, 401 (Ind. Ct. App. 2007)). "Indiana follows the general rule that when one theory of liability in a suit against an insured is covered, the insurer's duty to defend and indemnify is triggered as to the entire lawsuit." Aearo Corp. v. Am. Int'l Specialty Lines Ins. Co., 676 F. Supp. 2d 738, 745 (S.D. Ind. 2009).

*Exhaustion of 2004-2005 Policy*

Liberty Mutual argues that it is entitled to judgment on the pleadings on Count I of its complaint because the 2004-2005 policy was exhausted, contending that the court should give preclusive effect to Judge Hamilton's exhaustion determination in Dometic Corp. v. Liberty Mut. Ins. Co., No. 1:06-CV-1260-DFH-TAB, 2008 WL 4443234 (S.D. Ind. Sept. 26, 2008). Dometic conceded the issue in its briefing and at the hearing on this matter, so judgment on the pleadings is appropriate on Count I of Liberty Mutual's complaint.

*Duty to Defend*

Dometic argues that all three underlying putative class action complaints contain allegations of property damage sufficient to trigger Liberty Mutual's duty to defend. Dometic points to third-party property allegations by the named plaintiffs and broad allegations of hundreds or thousands of fires that caused millions of dollars in property damage. Dometic argues that although the named plaintiff's claims fall outside of the coverage periods, the court can and should

7

consider the putative classes' claims, which would fall within the unexhausted policy coverage periods. Liberty Mutual contends that no coverage lies because none of the named plaintiffs allege property damage that occurred during a policy period, the putative class claims are too speculative to trigger coverage and would be barred by the applicable statute of limitation, and the policies' exclusions bar or limit coverage.

Liberty Mutual first argues that it has no duty to defend Dometic against the underlying complaints because no named plaintiffs allege a potentially covered property damage claim during a policy period. It's undisputed that the property damage claims of the named plaintiffs in the underlying complaints all occurred years after the Liberty Mutual policies expired.[5] Liberty Mutual therefore contends it has no duty to defend because "[i]f the pleadings reveal that a claim is clearly excluded under the policy, then no defense is required." Newnam Mfg., Inc. v. Transcon. Ins. Co., 871 N.E.2d at 401 (quoting Liberty Mut. Ins. Co. v. OSI Indus., Inc., 831 N.E.2d 192, 198 (Ind. Ct. App. 2005)). Dometic argues that the court can't confine itself to the allegations of the named plaintiffs and should consider the putative class members' claims and whether the

---

[5] The earliest occurrence of property damage alleged in the *Papasan* putative class action is 2012, [Doc. No. 1–5 at ¶ 69]; the earliest occurrence alleged in the *Zucconi* putative class action is 2008, [Doc. No. 1–6 at ¶ 24]; and while no named plaintiff in the *Zimmer* putative class action alleges third-party property damage, the earliest fire alleged in the complaint is 2008. [Doc. No. 1–7 at ¶ 74]. The last unexhausted Liberty Mutual policy period ended in 2004.

8

complaints' class definitions cover putative class members who purchased Dometic products during the Liberty Mutual policies' coverage period.[6]

Neither party cites any cases applying Indiana law to their disagreement: whether an insurer's duty to defend is triggered by a putative class action complaint in which the named plaintiff's claims don't fall within the policies' coverage period, but, if the class is certified, the claims of class members might. Courts outside of Indiana have addressed the issue.

The Eleventh Circuit Court of Appeals considered a case in which the insurer argued, as Liberty Mutual argues in this case, that putative class members' claims are too remote and speculative to trigger the duty to defend and a court shouldn't consider whether a duty to defend exists in a putative class action in which coverage could potentially be triggered by the putative class members' claims until the class is certified. Hartford Acc. & Indem. Co. v. Beaver, 466 F.3d 1289 (11th Cir. 2006). That court held that an insurer has a duty to defend if the putative class's potential claims fall within the policy's coverage. Id. at 1296. The court noted that "no authority found in Florida law or, for that matter, anywhere else, has concluded that claims by putative class members are somehow insufficient to trigger an insurer's duty to defend." Id. at 1294. The

---

[6] The *Papasan* putative class action defines its class as "all persons who purchased or owned a [d]efective [g]as [a]bsorption [r]efrigerator manufactured or purchased on or after January 1, 1997." [Doc. No. 1–5 at ¶ 238]. The *Zucconi* putative class action complaint defines the putative class as including "[a]ll persons . . . who purchased a Dometic gas absorption refrigerator with a [d]efective [c]ooling [u]nit." [Doc. No. 1–6 at ¶ 127]. The *Zimmer* putative class action complaint defines the class as anyone in nine states who purchased or owned a defective Dometic refrigerator from January 1, 2001 to the present. [Doc. No. 1–7 at ¶ 233, 235].

9

court then reasoned that "the fight over class certification is often the whole ball game" in class actions, so "[t]he overwhelming importance of class certification to the ultimate resolution of the case militates strongly against leaving the insured without a defense until after a decision on class certification." Id. at 1296.

Other federal courts have also held that the potential claims of a putative class can trigger an insurer's duty to defend. *See* New NGC, Inc. v. Ace Am. Ins. Co., 105 F. Supp. 3d 552 (W.D.N.C. 2015) (applying North Carolina law and holding that courts must look beyond the allegations of the named plaintiffs in a putative class action to determine whether the potential class's claims trigger coverage under the policies); Paternostro v. Choice Hotel Int'l Servs. Corp., No. CIV.A. 13-0662, 2014 WL 6460844 (E.D. La. Nov. 17, 2014) (applying Louisiana law and denying the insurers motion to dismiss because the putative class representative's claims fall outside of the policy's coverage period on the grounds that "claims of class members would include injuries within a whole spectrum of dates"); Nationwide Mut. Ins. Co. v. Harris Med. Assocs., LLC, 973 F. Supp. 2d 1045 (E.D. Mo. 2013) (examining Georgia and Missouri law and concluding that an insurer isn't entitled to judgment as a matter of law when the named plaintiffs claims fell outside the policies' coverage period, but the claims of putative class members could fall within the coverage period); LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co., 2005 WL 146896 (N.D. Cal. 2005) (applying California law and holding that allegations of personal injury against putative class members triggered the insurer's duty to defend).

Liberty Mutual doesn't point the court to any cases directly addressing the issue that disagree with this persuasive authority. The approach of the federal courts that have addressed the issue is that generally followed under Indiana law, which provides that coverage is triggered when claims in the underlying complaint "potentially fall within indemnity coverage provided by the [p]olicies." Allstate Ins. Co. v. Preferred Fin. Sols., Inc., 8 F. Supp. 3d 1039, 1043 (S.D. Ind. 2014) (citing Newnam Mfg., Inc. v. Transcontinental Ins. Co., 871 N.E.2d at 401–402). Accordingly, the court will consider the putative class' claims when deciding whether Liberty Mutual owes Dometic a duty to defend.

Liberty Mutual contends that even if the court considers the putative class action claims, no coverage is triggered because, according to Liberty Mutual, the putative class claims alleged in the complaints are uncovered benefit-of-the-bargain and economic loss claims, not property damage claims. The court disagrees.

"In determining whether an insurance policy extends coverage in a particular suit, the Court must look to the nature of the complaint." Soc'y Ins. v. Jiffy Mini Marts, Inc., No. 208CV00203LJMWGH, 2011 WL 13234986, at *4 (S.D. Ind. Aug. 12, 2011) (citing Transamerica Ins. Servs. v. Kopko, 570 N.E.2d 1283, 1285 (Ind. 1991)). Liberty Mutual argues that the legal theories employed in the complaints demonstrate that the complaints don't include any property damage claims, but because a complaint's factual allegations, not its legal theories, determine whether coverage exists, the court will examine the factual allegations to determine whether they allege property damage claims. Id. *See also* Hartford

11

Fire Ins. Co. v. Thermos L.L.C., 146 F. Supp. 3d 1005 (N.D. Ill. 2015); Indiana Ins. Co. v. N. Vermillion Cmty. Sch. Corp., 665 N.E.2d 630, 635 (Ind. Ct. App. 1996).

The *Papasan* complaint alleges that Dometic's "[d]efective [g]as [a]bsorption [r]efrigerators have caused thousands of fires since 1997, and continue to cause *new* fires at an alarming rate." [Doc. No. 1–5 at ¶ 133] (emphasis supplied). The complaint expressly disclaims damages for bodily injury, but doesn't disclaim property damage and some of the named plaintiffs claim fires caused third-party property to be damaged. The Rule 23(a)(3) typicality allegations allege that "[p]laintiffs and the members of the [c]lass have all sustained injury in that . . . their [d]efective [g]as [a]bsorption [r]efrigerators are defectively designed and present an unreasonable risk of fire." Id. at ¶ 199. The prayer for relief requests that the court award the "damages under applicable state law for the subclasses." Id. at 118.

The *Zimmer* complaint also alleges that "[h]undreds, if not thousands, of fires have resulted from leaks in [Dometic refrigerators, which] . . . spread very fast and can turn into raging infernos, causing millions of dollars in property damage." [Doc. No. 1–7 at ¶ 179]. The class definition excludes personal injury claims, but contains no such exclusion for property damage claims. Id. at ¶ 235. The Rule 23(a)(3) typicality allegations allege that "[p]laintiffs and the members of the [c]lass have all sustained injury in that . . . their [d]efective [g]as [a]bsorption [r]efrigerators . . . are defectively designed and present an unreasonable risk of fire." Id. at ¶ 240. The prayer for relief requests that the

court award the plaintiffs and the class "all damages and relief that may be allowed under applicable law." Id. at 116.

The *Zucconi* complaint alleges that "[h]undreds, if not thousands, of fires have resulted from leaks in [Dometic refrigerators, which] . . . spread very fast and can turn into raging infernos . . . causing millions of dollars in property damage." [Doc. No. 1–6 at ¶ 77]. Some of the named plaintiffs allege third-party property damage from fires. Although the Rule 23(a)(3) typicality allegations allege only allege benefit of the bargain and economic loss injuries, the complaint's prayer for relief is expansive, requesting that the court award all relief deemed just and equitable.

The factual allegations of property damage in each of the underlying putative class action complaints are sufficient to trigger Liberty Mutual's duty to defend. *See* Soc'y Ins. v. Jiffy Mini Marts, Inc., No. 208CV00203LJMWGH, 2011 WL 13234986 at *4; Hartford Fire Ins. Co. v. Thermos L.L.C., 146 F. Supp. 3d 1005 (N.D. Ill. 2015); Indiana Ins. Co. v. N. Vermillion Cmty. Sch. Corp., 665 N.E.2d 630, 635 (Ind. Ct. App. 1996).

Liberty Mutual next argues that even if any of the putative class members properly stated a claim for property damage within a policy period, those claims would be barred by the applicable statutes of limitations. Liberty Mutual cites to the relevant statutes of limitations for a number of states, noting that the longest limitations period is six years. Liberty Mutual argues that the policy period for the last policy it issued expired in 2005 and the underlying suits were filed in 2016 and 2017, so the applicable statute of limitations would bar any potentially

13

covered claim. Dometic contends that it would be improper for the court to adjudicate a potential statute of limitations defense to an underlying complaint's claim in a declaratory judgment suit because the question before the court is whether the underlying complaints' allegation trigger coverage, not whether a potential defense might defeat a claim. The court agrees.

"It is the nature of the [underlying] claim, not its merits, that determines an insurer's duty to defend." 5200 Keystone Ltd. Realty, LLC v. Netherlands Ins. Comp., 29 N.E.3d 156, 161 (Ind. Ct. App. 2015). An insured purchases commercial general liability coverage for a defense against any potentially covered action, even frivolous suits, and an insurer "has a contractual duty to defend unfounded, false or fraudulent suits based upon risks it has insured." Davidson v. Cincinnati Ins. Co., 572 N.E.2d 502, 505 (Ind. Ct. App. 1991). Accordingly, the court declines to consider whether a statute of limitations defense could succeed against any claims in the underlying complaints.

Liberty Mutual also argues that various policy exclusions limit its duty to defend, but, in the course of their briefing, the parties appear to agree that three of the four exclusions don't bar coverage for third-party property damage claims.[7]

---

[7] The exclusions that Liberty Mutual concedes don't bar coverage for third-party property damage are exclusion k, which bars coverage for property damage to the insured's product; exclusion m, which denies coverage for damage to impaired property or property not physically injured; and exclusion n, which excludes coverage related to a recall of an insured's product. To the extent Liberty Mutual asks the court to decide whether or how these exclusions narrow the policies' coverage in light of the underlying complaints' allegations, the court declines to do so. Such an inquiry might be relevant to deciding Liberty Mutual's duty to indemnify, but it isn't relevant to determining its duty to defend: if an insurer has a duty to defend any part of a suit, it has a duty to defend against the entire suit. Aearo Corp. v. Am. Int'l Specialty Lines Ins. Co., 676 F. Supp. 2d 738, 745 (S.D. Ind. 2009).

14

The parties' dispute is therefore narrowed to the applicability of exclusion a, which excludes coverage for property damage the insured expected or intended. Liberty Mutual asserts that the underlying complaints allege that Dometic had actual knowledge of the defects in its products that caused fires and worked to conceal the inherent risks in those products.

"Coverage exclusions are construed strictly against the insurer and the insurer bears the burden of showing that an exclusion applies." Home Fed. Sav. Bank v. Ticor Title Ins. Co., 695 F.3d 725, 732 (7th Cir. 2012) (citing Hoosier Ins. Co. v. Audiology Found. of America, 745 N.E.2d 300, 309 (Ind. Ct. App. 2001)). Property damage is expected "when the insured acted even though he was consciously aware that harm was practically certain to occur from his actions." Armstrong Cleaners, Inc. v. Erie Ins. Exch., 364 F. Supp. 2d 797, 810 (S.D. Ind. 2005) (quoting PSI Energy, Inc. v. Home Ins. Co., 801 N.E.2d 705, 728 (Ind. Ct. App. 2004)).

Liberty Mutual contends that the allegations in the underlying complaints alleging that Dometic knew that its products were defectively designed and manufactured and that these units were causing fires, but continued manufacturing those products, demonstrate that Dometic expected or intended the third-party property damage alleged in the underlying complaints. The court disagrees. These allegations don't demonstrate that, when Dometic was manufacturing and selling products, it was "practically certain" that those products would cause a fire, resulting in third-party property damage. *See* id.

*Duty to Indemnify*

The parties also moved for judgment on the pleadings on Liberty Mutual's claim that it has no duty to indemnify Dometic, but the underlying actions are still proceeding, so the duty to indemnify claims aren't ripe. *See* Med. Assur. Co. v. Hellman, 610 F.3d 371, 375 (7th Cir. 2010). Accordingly, the proper disposition for those unripe claims is "to dismiss without prejudice the declaratory judgment action insofar as it sought a determination of the company's duty to indemnify." Prop.-Owners Ins. Co. v. Virk Boyz Liquor Stores, LLC, 219 F. Supp. 3d 868, 878 (N.D. Ind. 2016) (quoting Nationwide Ins. v. Zavalis, 52 F.3d 689, 693 (7th Cir. 1995)).

IV. CONCLUSION

For the foregoing reasons, the court:

1. GRANTS Liberty Mutual's motion for judgment on the pleadings, [Doc. No. 37], with respect to Count I of its complaint, which seeks a declaratory judgment of no duty to defend or indemnify under the 2004-2005 policy based on exhaustion;

2. DENIES Liberty Mutual's motion for judgment on the pleadings, [Doc. No. 37], with respect to Count II of its complaint;

3. GRANTS Dometic's motion for judgment on the pleadings, [Doc. No. 39], with respect to Count II of Liberty Mutual's complaint to the extent it seeks a declaratory judgment of no duty to defend;

4. DENIES Dometic's motion for judgment on the pleadings, [Doc. No. 39], with respect to Count II of Liberty Mutual's complaint to the extent it seeks a declaratory judgment of no duty to indemnify;

5. DISMISSES WITHOUT PREJUDICE Liberty Mutual's declaratory action to the extent it sought a determination of no duty to indemnify.

Dometic's breach of contract counterclaims remain pending.

SO ORDERED.

ENTERED:  March 6, 2019

/s/ Robert L. Miller, Jr.
Judge, United States District Court